AUSA: Andrew Jones

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **24 MAG 2999** |
| UNITED STATES OF AMERICA<br><br>               v.<br><br>FAREED DABIDAH,<br><br>               Defendant. | **COMPLAINT**<br><br>Violation of 18 U.S.C. § 922(o)<br><br>COUNTY OF OFFENSE:<br>BRONX |

SOUTHERN DISTRICT OF NEW YORK, ss.:

      Christopher Thomas, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

### COUNT ONE
### (Possession of Machineguns)

      1.      On or about August 15, 2024, in the Southern District of New York and elsewhere, FAREED DABIDAH, the defendant, knowingly possessed a machinegun, to wit, DABIDAH possessed multiple handguns that had been converted to operate as machineguns at his apartment in the Bronx, and further possessed parts designed and intended solely and exclusively, and a combination of parts designed and intended, for use in converting additional weapons into machineguns.

      (Title 18, United States Code, Section 922(o)(1).)

      The bases for my knowledge and for the foregoing charges are, in part, as follows:

      2.      I am a Detective with the New York City Police Department ("NYPD") currently assigned to the Major Case Field Intelligence Team. I am responsible for conducting and assisting investigations into firearms and firearms trafficking. I am currently assigned to investigate the proliferation of privately made firearms ("ghost guns") in New York City as part of a Ghost Gun Initiative undertaken jointly between the NYPD and prosecutors' offices. I have been personally involved in this investigation. This affidavit is based on my investigation, my conversations with other law enforcement officers and other individuals, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

Background on Ghost Guns and Glock Switches

3.   Based on my experience and training as part of the Ghost Gun Initiative, which has included attending meetings and conferences about the types of components and materials being sold over the internet and how these parts are packaged and sold, viewing online videos showing how to assemble the parts purchased online, learning about the 3D printing of firearms, and learning about machinegun conversion devices, I am aware of, among other things, the following related to the manufacture and assembly of privately made firearms:

   a.   A "ghost gun" is the colloquial term for what federal regulation defines as a "privately made firearm." According to the regulation, a privately made firearm is a "firearm, including a frame or receiver,[1] completed, assembled, or otherwise produced by a person other than a licensed manufacturer, and without a serial number placed by a licensed manufacturer at the time the firearm was produced." 27 C.F.R. § 478.11.

   b.   Ghost guns are regularly constructed from frames or receivers that were bought in an "unfinished" state or 3D printed, and further assembled using various components and tools to make an operational firearm. Once built, ghost guns are virtually indistinguishable from traditional firearms but lack serial numbers and other identifying marks, which make them essentially untraceable.

   c.   Under federal law, a "machinegun" is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). Also included into the definition of a machinegun is "any part designed and intended solely and exclusively or combination of parts designed and intended for use in converting a weapon into a machinegun." *Id.*

   d.   A machinegun conversion device ("MCD") is an item that converts a semiautomatic firearm into a fully automatic weapon by circumventing the weapon's intended cycle. As described above, an MCD meets the federal definition of a machinegun. When an MCD is installed in an otherwise semiautomatic firearm, depressing and holding down the trigger once will discharge all the ammunition that is available in the magazine of the firearm. Colloquially, MCDs for handguns are frequently referred to as "Glock switches" and MCDs for assault rifles are referred to as "auto sears."

Background of the Investigation

4.   Based on my participation in the investigation, which has included reviewing records provided by online retailers that sell the components needed to 3D print and assemble ghost guns, I am aware of, among other things, the following:

---

[1] A "frame" is the regulated portion of a handgun that provides the structure to the firearm and holds the components required to make the handgun operational. A "receiver" is the regulated portion of any firearm other than a handgun, such as a rifle, that likewise is regulated under federal law and holds the primary components for a functioning firearm. 27 C.F.R. § 478.12(a)(1)-(2). Frames and receivers are regulated as "firearms" under federal law. 18 U.S.C. § 921(a)(3)(B).

a. Between at least in or about October 2022 at least in or about July 2024, FAREED DABIDAH, the defendant, has been acquiring the parts needed to assemble dozens of ghost guns. Records from various online retailers that sell gun components have shown more than 90 shipments to DABIDAH and sent to an apartment in the Bronx (the "Dabidah Apartment"). Materials sent in the shipments included 3D printing materials that could be used to print firearm frames and receivers and the additional internal components needed to convert 3D printed frames and receivers into functioning firearms.

b. Based on my training and experience, and from analyzing the identified shipment records, a conservative estimate was that DABIDAH received the items necessary to complete the build of at least eight fully functioning handguns and possibly thirteen other firearms.

c. In addition to the analysis of records from online retailers, I am aware, from discussing the matter with law enforcement agents who work at JFK International Airport and reviewing records of the seizure, that in or about January 2024, two firearms suppressors (also known as "silencers")[2] were shipped from China to DABIDAH at the Dabidah Apartment. The suppressors were seized at the airport, and a picture of them is below.



The Search of the Dabidah Apartment

5. On or about August 12, 2024, the Honorable Sarah L. Cave, United States Magistrate Judge for the Southern District of New York authorized a search of the Dabidah Apartment after finding probable cause to believe that the apartment would contain evidence of firearms offenses.

---

[2] Under federal law, firearm silencers are regulated as firearms. 18 U.S.C. §§ 921(a)(3)(C), 921(a)(25).

6. On or about August 15, 2024, I participated in the search of the Dabidah Apartment, pursuant to the warrant authorized by Judge Cave. During the search of the apartment, FAREED DABIDAH, the defendant was at the apartment, along with DABIDAH's mother. During the execution of the search warrant at DABIDAH's apartment, I and other law enforcement officers found, among other things, the following:

- Approximately 39 machinegun conversion devices, including approximately 31 Glock switches, for fully automatic handgun conversion, and approximately eight auto sears, for fully automatic assault rifle conversion;[3]
- Approximately 14 completely assembled 9mm ghost gun handguns, including approximately six ghost gun handguns that had Glock switches installed;
- Approximately five partially assembled AR-style assault rifles, including approximately two partially assembled assault rifles that had auto sears installed;
- Approximately two silencers;
- Approximately 15 additional 3D printed handgun frames;
- Numerous magazines for use in the firearms found in the apartment;
- Assorted 9mm handgun ammunition, 5.56mm rifle ammunition, and 7.62mm rifle ammunition;
- Equipment to reload and manufacture ammunition; and
- Approximately two 3D printers

Included in the totals above are items that were found in DABIDAH's bedroom during the search, which included: approximately one 9mm ghost gun with a Glock switch installed, approximately five 3D printed handgun frames, a bag containing approximately 25 Glock switches, and the 3D printers. Many of the other firearms and MCDs described above were found along a stairwell leading to a vacant basement-level unit in the apartment building.

---

[3] As part of my experience and training with the NYPD Ghost Gun Initiative, I and others on my team have reviewed publications from the ATF and various online materials, among other sources, relating to MCDs. Using this training and experience, I have instructed other NYPD units about the identification of MCDs. Based on this training and experience, I recognize the devices found in the Dabidah Apartment as MCDs.

7. Photographs of many of the items found during the search of the Dabidah Apartment are below.



*3D Printed Handguns and Assault Rifles*



*9mm Ghost Gun with Glock Switch*



*Assault Rifle with Auto Sear*

5




*Glock Switches*                                                                                          *Auto Sears*

WHEREFORE, I respectfully request that FAREED DABIDAH, the defendant, be imprisoned or bailed, as the case may be.

/s Christopher Thomas  (By Court with Authorization)
Christopher Thomas
Detective, NYPD

Sworn to by reliable electronic means pursuant to
Fed. R. Cr. P. 41(d)(3) and 4.1 this 15th day of
August, 2024.

_____
THE HONORABLE SARAH L. CAVE
United States Magistrate Judge
Southern District of New York

6