

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

August 7, 2025

**BY ECF**
The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

> Re:    *United States v. Fareed Dabidah*, 24 Cr. 514 (ER)

Dear Judge Ramos:

The Government respectfully submits this letter in advance of the sentencing of Fareed Dabidah, following his conviction for illegally possessing machineguns. For the reasons set forth below, the Government respectfully submits that a sentence within the Guidelines range of 57 to 71 months' imprisonment would be sufficient but not greater than necessary to achieve the purposes of sentencing.

## I.    Offense Conduct

Between October 2022 and August 2024, Fareed Dabidah assembled an arsenal of 3D-printed handguns and assault rifles that were equipped with machinegun conversion devices. During the investigation, law enforcement identified over 90 shipments of ghost gun-related materials to the defendant's home. Law enforcement also intercepted a transnational shipment of silencers from China to the defendant.

On August 15, 2024, the NYPD searched the defendant's apartment, pursuant to a warrant issued in this District. During that search, the officers found a weapons cache that included:

- Fourteen fully assembled, 3-D printed handguns;
- Fifteen additional 3-D printed handgun frames;
- Five partially assembled AR-style assault rifles;
- Thirty-nine machinegun conversion devices (31 for handguns and 8 for assault rifles)
- Two firearms suppressors;
- Two 3-D printers;
- Handgun and rifle ammunition and magazines; and
- Ammunition reloading equipment.

Photos of many of these items are below.



## II.    <u>The Sentencing Guidelines</u>

The defendant pleaded guilty, without a plea agreement, on May 6, 2025, to a one-count indictment that charged him illegally possessing machineguns, in violation of 18 U.S.C. § 922(o)(1). In the PSR, the Probation Office has calculated the offense level as 25 based on the following.

- The base offense level for violations of 18 U.S.C. § 922(o) is 18. *See* U.S.S.G. § 2K2.1(a)(5);

- The offense involved between 25 and 99 firearms, and therefore six levels are added. *See* U.S.S.G. § 2K2.1(b)(1)(C);

- The defendant knew (or was willfully blind or consciously avoided learning) that one or more firearms involved in the offense was not marked with a serial number, and therefore four levels are added. *See* U.S.S.G. § 2K2.1(b)(4)(B)(ii);

- The defendant accepted responsibility, and therefore three levels are subtracted. *See* U.S.S.G. § 3E1.1.

Probation found that the defendant has zero criminal history points and that accordingly, he is in criminal history category I. With an offense level of 25, the Guidelines sentencing range is 57 to 71 months' imprisonment.

The defendant objects to the enhancements based on the number of firearms involved in the offense, *see* Def. Sub. At 6 n.1; PSR at 22, and further objects to the enhancement for knowing the firearms lacked serial numbers, *see* PSR at 23. Probation's calculation of the offense level is correct, and both enhancements apply.

For the multiple firearms enhancement, the defendant objects because a machinegun conversion device does not meet the definition of a "firearm" that is used in the Guidelines.[1] The defendant is right that this definition of a firearm does not include bare machinegun conversion devices (meaning those not paired with firearms), but he is wrong that this definition does not reach the guns at issue in this case. The defendant possessed firearms and the machinegun conversion devices to use in those firearms. As noted in the PSR, the defendant possessed 14 fully assembled handguns, 15 handgun frames, and 5 assault rifle receivers. PSR ¶ 18. Each of these items meets the definition of a firearm in 18 U.S.C. § 921(a)(3). For each of these firearms, the defendant also possessed a machinegun conversion device, making each of these guns both a machinegun, as defined in 26 U.S.C. § 5845(b), and a firearm, as defined in 18 U.S.C. § 921(a)(3). The defendant possessed thirty-four firearms with machinegun conversion devices, and therefore the enhancement from U.S.S.G. § 2K2.1(b)(1)(C) applies.[2]

For the serial number enhancement, the defendant argues he did not know his guns lacked serial numbers. This argument is belied by the facts. In his letter to the Court, the defendant acknowledges that he 3-D printed and assembled firearms. *See* Def. Ex. 1. The defendant knowingly created the guns he possessed on his own 3-D printers. He spent time assembling working firearms from the parts he created and bought online. The defendant knew exactly what went into creating and building his guns. And he knew that what he was doing was illegal and wrong. There is simply no serious argument that the defendant was unaware that the dozens of guns he created and built lacked serial numbers.

---

[1] The Guidelines Manual uses, for its definition of a firearm, the definition from 18 U.S.C. § 921(a)(3), which includes "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." *See* U.S.S.G. § 2K2.1 cmt. n.1.

[2] Six handguns and two assault rifles had the machinegun conversion devices already inserted when law enforcement officers found them. *See* PSR ¶ 18. That for the remaining 26 firearms the machinegun conversion devices were not currently installed in the firearms at the time of seizure, but were instead nearby in the apartment, does not change the status of the seized firearms as both machineguns and firearms. *See Bondi v. VanDerStock*, 145 S. Ct. 857, 864 (2025) (the Gun Control Act definition of a "firearm," codified at 18 U.S.C. § 921(a)(3), includes firearms that are "disassembled").

### III.    A Guidelines Sentence is Fair and Just

The Court should sentence the defendant to a term of imprisonment within the Guidelines range of 57 to 71 months' imprisonment. This sentence is the minimum the Court can impose that will account for the statutory sentencing factors, including most significantly, to reflect the nature and seriousness of the offense; promote respect for the law; provide just punishment for the offense; and afford adequate deterrence to criminal conduct, as required by 18 U.S.C. § 3553(a).

*First,* the seriousness of the defendant's conduct supports a substantial term of imprisonment that will also promote respect for the law and provide a just punishment. The defendant assembled and kept, in his apartment in New York City, dozens of firearms that were atypically dangerous and destructive. The defendant possessed untraceable ghost guns, modified to enable automatic fire, including multiple assault rifles. Each of these characteristics of the defendant's firearms made his collection dangerous, and taken together they made his arsenal terrifying. A recent ATF report has described that between 2017 and 2023, the number of ghost guns that were used in crimes recovered annually by law enforcement officers has sky rocketed from 1,629 to 27,490.[3] These ghost guns were made worse because they were outfitted with the machinegun conversion devices. The ability of the defendants' firearms to engage in automatic fire—at the rate of one hundred or more rounds per minute—further exacerbated the danger, as has been seen in many events of mass murder in recent years.[4] Similarly, the defendant's possession of assault rifles threatens the safety in a particularly destructive way. Assault rifles have featured prominently in mass shootings, including the 2023 Lewiston shooting (18 killed), 2022 Buffalo shooting (10 killed), the 2022 Uvalde shooting (21 killed), the 2018 Pittsburgh shooting (11 killed), the 2017 Sutherland Springs shooting (26 killed), the 2017 Las Vegas shooting (60 killed), the 2016 Orlando shooting (49 killed), and the 2012 Sandy Hook shooting (27 killed).  In recent years, assault rifles have accounted for between 50% and 60% of all major shootings.[5]  And even if used as a tool of ordinary crime (rather than as an instrument of mass murder), such weapons are deadly to a degree far beyond that of handguns.

The importance of a sentence within the Guidelines range to address the significance of the defendant's conduct is highlighted by the fact that the Guidelines do not currently address the most dangerous elements of his conduct. Although the defendant's base offense level is impacted by his possession of machineguns, there are no offense level enhancements related to the possession of either machinegun conversion devices or assault rifles. At least with respect to the machine gun conversion devices, the Sentencing Commission has recognized the inadequacy of the current

---

[3]    https://www.atf.gov/firearms/docs/report/nfcta-volume-iv-part-v-%E2%80%93-pmf-updates-and-new-analysis/download

[4] New York Times, The Bump Stock Ban Stemmed From a Horrific Mass Shooting (June 14, 2024),    available at    https://www.nytimes.com/2024/06/14/us/bump-stock-vegas-shooting-supreme-court.html; see also New York Post, Alabama Mass Shooting Gunmen Used Fully Automatic Weapon in Attack That Left Four Dead (Sept. 22, 2024), available at https://nypost.com/2024/09/22/us-news/alabama-nightclub-shooters-used-full-automatic-gun-with-glock-switch-authorities/.

[5] *See* https://www.theviolenceproject.org/key-findings/

Guidelines, and amendments slated to go into effect in November would increase the defendant's offense level by four points for possessing more than 30 machinegun conversion devices.[6]

The defendant's attempts to minimize his conduct are lacking. He calls this crime his "creative outlet" and a mere "hobby." Def. Sub. at 7. But these simple explanations make no sense. There is no reason, if 3-D printing was only a hobby, to 3-D print guns and not some other, non-lethal item. The "hobby" argument also falls apart considering the items the defendant possessed that went beyond manufacturing guns and were intended to make use of the guns, including magazines, silencers, and ammunition. And the defendant's guns did not remain idle.  Below is an image from video found during a search of the defendant's phone that was recorded in December 2022 and shows the defendant shooting one of the guns he manufactured.



*Second*, the need to deter future crimes, both of the defendant and more broadly, counsel in favor of a Guidelines sentence.

As to the defendant, while it is true that the defendant is young, in many ways this makes a significant, lengthy sentence even more important, especially as it relates to the need for the sentence to promote deterrence and protect the community from the defendant. Data compiled by the United States Sentencing Commission shows that defendants who are convicted of firearms offenses and who are released in their twenties recidivate at a rate of approximately *80 percent*:[7]

---

[6]    https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2025

[7] United States Sentencing Commission, Recidivism of Federal Firearms Offenders Released in 2010 (Feb. 9, 2022), at 29, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20220209_Recidivism-Firearms.pdf.



Figure 11. Rearrest Rates of Firearms and All Other Offenders by Age at Release

The risk of recidivism drops the older a defendant is upon release. The most common crime upon rearrest is assault, which accounts for approximately one-quarter of the rearrests.

The need to impose a sentence that will deter others is equally important. Crimes like the defendant's are exploding in recent years. As noted above, ghost gun seizures have increased by nearly 17x in only seven years. The use of machine gun conversion devices to commit crimes has also rapidly risen, with a more than 800% increase between 2019 and 2023. Charts reflecting the increases in the use of ghost guns and machinegun conversion devices to commit crimes are below.[8]



The rapid increase in the use of these types of firearms to commit crimes underscores the urgent need for deterrence. Would-be defendants must know that the penalties for creating, possessing, and using firearms that are engineered to kill efficiently and be untraceable will result in significant punishment.

---

8      https://www.atf.gov/firearms/docs/report/nfcta-volume-iv-part-v-%E2%80%93-pmf-updates-and-new-analysis/download

## IV.    **Conclusion**

      The Court should sentence the defendant to a term of imprisonment of between 57 and 71 months.

Respectfully submitted,

JAY CLAYTON
*United States Attorney for the*
*Southern District of New York*

by:   /s/ Andrew Jones
      Andrew Jones
      Assistant United States Attorney
      (212) 637-2249